## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**MICHELLE RENEE BEST,**

      **Petitioner,**

**v.**
                                        **Civil No. 2:20cv138**
                                       **Criminal No. 2:18cr147**

**UNITED STATES OF AMERICA,**

      **Respondent.**

### OPINION AND ORDER

This matter is before the Court on Michelle Renee Best's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.[1]  ECF No. 94.  For the reasons set forth below, the motion is **DENIED.**

### I. FACTUAL AND PROCEDURAL HISTORY

On September 20, 2018, Petitioner was charged in an indictment with twelve drug-related charges and two firearm-related charges. ECF No. 1.  Petitioner initially pled not guilty to all charges, but she later entered into a written plea agreement with the Government, and on December 4, 2018, before Magistrate Judge Lawrence R. Leonard, Petitioner pled guilty to Count One –

---

[1] In connection with such motion, Petitioner also filed a motion to proceed <u>in forma pauperis</u>, ECF No. 96, and a motion for an extension of time to file a reply to the Government's response, ECF No. 116.  Both motions are **DENIED AS MOOT** given that Petitioner is permitted to file her § 2255 motion at no cost to her and because Petitioner ultimately filed her reply within the timeline prescribed by the Court's previous extension Order, ECF No. 114.

Conspiracy to Manufacture, Distribute, and Possess with Intent to Manufacture and Distribute More than 40 Grams of Fentanyl, More than 100 Grams of Heroin, and More than 500 Grams of Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B); and Count Two – Distribution of Fentanyl Resulting in Serious Bodily Injury, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). ECF Nos. 50, 51. Satisfied with Petitioner's sworn statements indicating that she was pleading guilty because she was in fact guilty of the charged offenses and that she had entered into such plea knowingly, freely, and voluntarily, and further finding that her plea of guilty was supported by an independent basis in fact as to each of the essential elements of the offenses, Judge Leonard accepted Petitioner's guilty plea to both counts. ECF Nos. 53, 98.

As reflected in the Presentence Investigation Report ("PSR") prepared for sentencing, Petitioner's advisory Guideline range was determined to be a term of imprisonment of 360 months to life. ECF No. 81. Such range was predicated on a Total Offense Level of 41, consisting of a Base Offense Level of 38 on Count Two, two-level enhancements each for possessing a firearm, maintaining a drug premises, and obstructing justice, and a three-level reduction for acceptance of responsibility. Id. In her sentencing position paper, Petitioner objected to the drug premises and obstruction enhancements. ECF No. 76.

2

On March 14, 2019, Petitioner appeared before this Court, with counsel, for sentencing. ECF No. 77. At the hearing, the Court asked Petitioner and her counsel whether there was any reason why it should not accept the Plea Agreement and make a finding of guilt, and both Petitioner and her counsel answered in the negative. ECF No. 99, at 5:17-24, 6:2-5. Consequently, the Court accepted the Plea Agreement and made the finding of guilt as to Counts One and Two. Id. at 6:6-7. Thereafter, Petitioner withdrew her objection to the drug premises enhancement, id. at 10:5-10, but persisted in her objection to the obstruction enhancement, arguing that the purported "relevant conduct"—statements made by Petitioner during recorded telephone calls while in pretrial custody regarding a confidential informant and another individual— did not amount to obstruction of justice, see id. at 10:12-19; see also ECF No. 76, at 2-3. The Court overruled the objection, finding that the statements amounted to attempts to unlawfully influence a co-defendant or witness and/or to suborn perjury. ECF No. 99, at 22:7-25:15.

After confirming with Petitioner that there were no other objections to the PSR, id. at 38:7-12, and after consideration of the 18 U.S.C. § 3553(a) sentencing factors, the Court sentenced Petitioner to 360 months' imprisonment on each count, to be served concurrently, representing the low-end of the advisory Guideline range, ECF No. 79. The remaining twelve counts of the indictment

3

were dismissed.  Id.  Petitioner did not appeal her conviction or sentence, rendering her conviction final on March 29, 2019, fourteen days after the Court's entry of judgment.  See Fed. R. App. P. 4(b)(1)(A)(i), (b)(6); United States v. Osborne, 452 F. App'x 294, 295 (4th Cir. 2011) (unpublished per curiam) (explaining that a conviction becomes "final" for purposes of § 2255(f)(1) at the "expiration of the time for seeking [a direct appeal]," and that the appeal period in a criminal case extends "fourteen days from the date when judgment was entered on the criminal docket" (internal quotation marks omitted)).

Petitioner timely filed the instant § 2255 motion on March 1, 2020, raising five grounds for relief: (1) her counsel rendered ineffective assistance in failing to review discovery information and the PSR; (2) her counsel rendered ineffective assistance in failing to investigate Petitioner's claim of actual innocence; (3) the prosecutor engaged in misconduct; (4) the Court failed to hold a hearing regarding Petitioner's statement that she felt coerced to sign the Plea Agreement; and (5) the PSR contained inaccurate information.  The Government filed its response on June 1, 2020, opposing the motion in its entirety on the merits.  ECF No. 107. After receiving multiple extensions of time, Petitioner filed a reply on December 21, 2020.  ECF No. 115.

## II. STANDARD OF REVIEW

A § 2255 motion is essentially a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. United States v. Hadden, 475 F.3d 652, 663 (4th Cir. 2007). To obtain § 2255 relief, a petitioner bears the burden of proving that her sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

To be sure, the existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). On the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). Accordingly, a § 2255 collateral challenge "may not do service for an appeal." Id. at 165.

5

A § 2255 petitioner need not, however, overcome such "higher hurdle" to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both: (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) that counsel's inadequate performance resulted in prejudice to the petitioner. Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

Satisfying the first prong of Strickland requires a petitioner to establish that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Reviewing courts strongly presume that counsel exercised reasonable professional judgment, and only in "relatively rare situations" will a § 2255 motion establish that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Tice v. Johnson, 647 F.3d

87, 102 (4th Cir. 2011) (quoting Strickland, 466 U.S. at 690).  In reviewing counsel's performance, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.  Furthermore, a petitioner must go beyond demonstrating that counsel's performance was below average because "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see Strickland, 466 U.S. at 687.  As explained by the Fourth Circuit, the "basic lesson" of Strickland is not just deference but high deference, and attorneys are permitted to "be selective and strategic" in determining how to defend a case.  United States v. Mason, 774 F.3d 824, 828, 830 (4th Cir. 2014).

The prejudice prong of the Strickland test is slightly modified where, as here, a petitioner challenges a conviction entered after a guilty plea; in such circumstances, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  Additionally, alleging ineffective assistance of counsel following a guilty plea entered during a

properly conducted Rule 11 plea colloquy requires a petitioner to overcome the "formidable barrier" of her sworn testimony at that proceeding.   United States v. White, 366 F.3d 291, 295-96 (4th Cir. 2004).   Indeed, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations [s]he makes under oath during a plea colloquy." Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992).   Accordingly, a "district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the [petitioner's] sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

### III. DISCUSSION

As indicated above, Petitioner raises five grounds for relief in her § 2255 motion.   The Court addresses each in turn.

### A. Grounds One and Two: Ineffective Assistance of Counsel

First, Petitioner contends that her counsel, Lawrence Woodward, Jr., was ineffective in at least two respects.

### 1. Failure to Review Discovery and the PSR

First, Petitioner argues that "Mr. Woodward failed to review discovery information." ECF No. 94, at 4.   More specifically, Petitioner claims that her counsel failed to review the "phone calls that resulted in defendant[']s obstruction of justice enhancement that ultimately led to a 2 level increase in defendant[']s base offense level." Id. (internal quotation marks

8

omitted).   Counsel allegedly "admitted to this on the record at
the sentencing hearing." Id.  Had counsel adequately reviewed the
content of those phone calls, Petitioner argues, she would have
received a Base Offense Level of 39 instead of 41, which would
have resulted in a lower Guideline range.   Id. at 14.

In the same asserted ground, Petitioner also states that she
informed the Court at sentencing that counsel "never reviewed the
PSR with her," resulting in a "15 minute recess" for her and
counsel to review the PSR.   Id. at 4.   During this brief recess,
counsel purportedly advised her that "she is making the judge
'mad'" and that "she needs to tell [him] they were able to review
the PSR" so that they could "move forward with the proceedings."
Id.

The record and Petitioner's own statements at sentencing and
in her reply brief refute both claims.  As to Petitioner's claim
that counsel admitted on the record at sentencing that he failed
to review the phone calls forming the basis of the obstruction
enhancement, the transcript clearly demonstrates that the opposite
is true.  As indicated above, at sentencing, counsel objected to
the obstruction of justice enhancement.   In doing so, counsel
represented to the Court, "I reviewed the calls that are in the
PSR."   ECF No. 99, at 11:17-18.  As set forth in Petitioner's
sentencing position paper, counsel proceeded to argue that, while
he did not dispute the factual content of the calls, he did not

9

believe such content rose "to the level of obstruction." Id. at 10:14-17. That the Court ultimately overruled counsel's otherwise good-faith objection does not suggest constitutionally deficient performance.

Aside from her entirely conclusory statements, Petitioner has presented no evidence to support her claim that counsel failed to review the phone calls associated with the obstruction enhancement, and indeed, the sentencing hearing transcript indicates otherwise. Accordingly, Petitioner's ineffective assistance claim on this point lacks merit.[2] See United States v. Evans, 429 F. App'x 213, 214 (4th Cir. 2011) (unpublished per

---

[2] In her reply, Petitioner further argues that the obstruction of justice enhancement was inappropriate given that the conduct underlying the enhancement occurred while she was in custody on related state charges, several months before the federal indictment was filed. ECF No. 115, at 3-4 (citing United States v. Gacnick, 50 F.3d 848 (10th Cir. 1995)). Critically, Petitioner did not assert this factually distinct claim in her original § 2255 motion (nor did she raise it at sentencing or on direct appeal). Rather, such claim was improperly raised for the first time in a reply brief without an associated request seeking leave to amend her § 2255 motion. See R. Gov. § 2255 Proc. for U.S. Dist. Cts. 2(b) (indicating that a § 2255 motion "must . . . specify all the grounds for relief available to the moving party" (emphasis added)); see also United States v. Pittman, 209 F.3d 314, 317-18 (4th Cir. 2000) (discussing "relation back" principles in a § 2255 case and rejecting a "broad view" that would permit conceptually distinct ineffective assistance claims to relate back as long they arose out of the same trial or proceeding as the original claims). Petitioner's improperly raised reply-brief claim, which was asserted more than nine months after she filed her § 2255 motion and nearly twenty-one months after her conviction became final, is **DISMISSED** as untimely pursuant to 28 U.S.C. § 2255(f)(1). The Court further notes that even if such claim were timely, the Court cannot say that counsel's failure to also object to the obstruction enhancement on that basis reflects constitutionally deficient performance. Cf. U.S.S.G. § 3C1.1 cmt. n.1 ("Obstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction.").

curiam) (no evidentiary hearing required where a petitioner fails to "present[] a colorable Sixth Amendment claim showing disputed facts beyond the record [that requires] a credibility determination . . . to resolve the issue" (citing <u>United States v. Witherspoon</u>, 231 F.3d 923, 925–27 (4th Cir. 2000); <u>Raines v. United States</u>, 423 F.2d 526, 529 (4th Cir. 1970)); <u>see also</u> 28 U.S.C. § 2255(b).

Next, Petitioner's claim that counsel failed to review the PSR with her is belied by Petitioner's own statements both at sentencing and in her reply brief. At sentencing, after counsel represented that he had previously met with Petitioner "two or three times about the presentence report" and had "fully reviewed it" with her, ECF No. 99, at 36:14-18, the Court asked Petitioner whether she had reviewed the PSR and the addenda with counsel, and Petitioner answered in the affirmative, <u>id.</u> at 36:22-24. When asked whether she had sufficient time to review the PSR and the addenda with her attorney, Petitioner stated, "He gave it to me Sunday. I haven't seen him since until this morning."[3] <u>Id.</u> at 36:25-37:3. In light of Petitioner's response, the Court took a brief recess to allow Petitioner to privately confer with counsel. <u>Id.</u> at 37:4-16. Shortly after the hearing reconvened, Petitioner confirmed that she had reviewed the PSR and the addenda with her

---

[3] As stated previously, Petitioner's sentencing hearing occurred on March 14, 2019, which was a Thursday.

11

attorney and that she had sufficient time to do so.   Id. at 37:17-

38:24.    Moreover,  counsel  provided  critical  clarification

regarding Petitioner's previous statement that seemed to indicate

that she was not provided an opportunity to review the PSR and the

addenda until four days prior:

> MR. WOODWARD: Your Honor, if I could correct the
> record, I did want one thing, to be fair to Ms. Best.
> The last addendum came out on the 7th, which I believe
> was Thursday.  I got to read it last Friday, the 8th.
> THE COURT: The one-page second addendum?
>
> MR. WOODWARD: And I hand-delivered that to her on
> Sunday of this -- which I guess would have been the 10th.
> Two days at the jail.  On Sunday I gave it to her.
>
> THE COURT: That's what she was referring to?
>
> MR. WOODWARD: She is correct that I gave her -- I
> heard her to say I didn't give her the presentence report
> until Sunday, but she is correct, I gave her the addendum
> with the notes, the objections.  Because obviously prior
> to Sunday we had already filed our objections and
> position papers.
>
> THE COURT: All right.  And the addendum, the second
> addendum to the presentence report is a page and a
> paragraph at the top of the second page.
>
> MR. WOODWARD: Yes, sir.  That's correct.
>
> THE COURT: All right.  But now, to the extent there
> were any questions about that, you've had a chance to
> talk with her?
>
> MR. WOODWARD: Yes, sir.

Id. at 38:25-39:21.  The veracity of this interaction is confirmed

by Petitioner's reply brief, wherein Petitioner admits that her

counsel reviewed the PSR with her more than a month prior to

sentencing. ECF No. 115, at 4. She further states that at such meeting, she "went over page by page all the discrepancies and inaccuracies in the PSR," and counsel allegedly informed her that he would discuss those issues with the probation officer "and get accurate information reflected." Id. As made clear at the sentencing hearing, it was the one-page and one-paragraph second addendum to the PSR (which was prepared on March 7, 2019, and included no information material to the instant § 2255 motion) that Petitioner had received for the first time four days prior to sentencing, not the entire PSR. And the Court gave Petitioner time to discuss such addendum with her attorney during a recess, after which time she confirmed under oath that she had reviewed the PSR and addenda with her attorney, that she had adequate time to do so, and that there was nothing further that she needed to discuss with counsel with respect thereto. In light of Petitioner's own statements both at sentencing and in her reply brief, her current claim that counsel failed to review the PSR with her is rejected.

In light of the above, Petitioner's first ineffective assistance claim is without merit, and her motion is therefore **DENIED** as to that claim.

## 2. Failure to Investigate Claim of Actual Innocence

Petitioner's second ineffective assistance claim asserts that counsel failed to investigate her claim of actual innocence as to

Count Two of the indictment.  Id. at 5.  With respect to the conduct forming the basis of that charge, the indictment provides, "On or about December 16, 2017, MICHELLE BEST supplied fentanyl to K.R., who suffered a serious bodily injury and fatal overdose caused by K.R.'s use of that fentanyl.  [Co-defendant] DAREN MILLIGAN obtained the fentanyl from MICHELLE BEST and distributed it to [co-defendant] CHRISTOPHER BARDALL, who distributed it to K.R."  ECF No. 1, at 5; accord id. at 7.  The Statement of Facts, agreed to by Petitioner in conjunction with her guilty plea, similarly reads, in relevant part,

> On December 16, 2017, the defendant supplied Milligan approximately one gram of narcotics, which later tested positive for fentanyl.  Milligan distributed the same narcotics, which contained fentanyl to Bardall, who then sold some of it to K.R., who used it and overdosed.  K.R. went into a seventeen hour coma from her use of [Best's] fentanyl.  [K.R.] died the next day.

ECF No. 52 ¶ 5.  According to Petitioner's habeas filing, however, she was on vacation in Florida from December 10, 2017, to December 17, 2017, and therefore could not have supplied fentanyl to Milligan on December 16, as stated in the indictment and Statement of Facts.  ECF No. 94, at 5.  To support her claim, Petitioner has attached to her motion a number of exhibits, including a credit card statement showing purchases in Florida (as well as North Carolina and South Carolina) that occurred during the above date range as well as a booking confirmation for a Florida resort with

a check-in date of December 10, 2017, and a check-out date of December 17, 2017.  ECF No. 94-1 to -4.

Petitioner allegedly informed her counsel of this fact and provided him with supporting records, yet he purportedly failed to investigate the matter.  Had he done so, Petitioner argues, she would have been able to prove that she was innocent of such charge, which, she claims, would have negated the basis for the conspiracy charge (Count One) and resulted in a lower attributed drug quantity and a lesser sentence.  ECF No. 94, at 14.  Instead, counsel allegedly told Petitioner "she had no defense because a jury would believe her codefendant [Milligan's testimony that Petitioner supplied the drugs] because he is a relative, and she had drugs in her residence."  ECF No. 115, at 7; see ECF No. 81, at 5-6.

At the outset, Petitioner's claims run counter to her sworn statements at her guilty plea hearing.  Specifically, Petitioner affirmed the following: (1) she had read the indictment and fully discussed the charges with her attorney, ECF No. 98, at 5:8-15; (2) she had discussed all of the facts of the case with her attorney and was satisfied that her attorney had fully considered all the facts and discussed with her any possible defenses she might have to the charges, id. at 17:3-12; (3) she was pleading guilty to the offenses because she was in fact guilty of them, id. at 23:4-6; (4) she read the Statement of Facts, signed it, and initialed each page, id. at 23:7-14; (5) the Statement of Facts was accurate, and

she did not disagree with or take exception to anything contained therein, id. at 24:1-9; and (6) if the case proceeded to trial, the Government's evidence would be sufficient to prove each of those facts beyond a reasonable doubt, id. at 24:10-13.  The Court cannot identify any reason why Petitioner should not be bound by these sworn statements and therefore **DENIES** this claim without further discussion.  See Lemaster, 403 F.3d at 221-22; Fields, 956 F.2d at 1299.

Alternatively, the Court does not find that counsel offered constitutionally deficient assistance in this regard.  Pursuant to an Order of this Court, ECF No. 100, Mr. Woodward submitted an affidavit responding to Petitioner's ineffective assistance allegations, ECF No. 103.  Because such affidavit is a part of the record, Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 7(b), and because this particular claim does not turn on a credibility determination, see United States v. Blondeau, 480 F. App'x 241, 243 (4th Cir. 2012) (unpublished per curiam) (finding that the district court abused its discretion in dismissing ineffective assistance claim without holding evidentiary hearing where the petitioner's allegations regarding interactions with his attorney "necessarily require[d] a credibility determination" (citing

Witherspoon, 231 F.3d at 925–27)),[4] the Court may properly rely on the affidavit here.  In such affidavit, counsel states as follows:

> Ground Two of the Motion alleges that I failed to investigate Ms. Best's claim of innocence.  She submitted Exhibits A–D to support her claim that she was in Florida at or near the time of K.R.'s death.  I fully explained the law applicable in her case including conspiracy, liability, and foreseeability.  I explained to Ms. Best that she did not have to intend for K.R. to die or to have foreseen her death to be guilty of the crimes with which she was charged.  I also explained that the law did not require that Ms. Best distribute directly to K.R.—that putting fentanyl in a supply chain would be sufficient for a guilty finding so long as the United States could connect the fentanyl to her and prove that but for the fentanyl K.R. would not have suffered serious bodily injury.  I explained that introducing evidence to a jury of Ms. Best's presence in Florida at or near the time of K.R.'s death would not establish a defense to conspiracy or aiding and abetting the distribution of fentanyl that led to K.R.'s coma and subsequent death.

ECF No. 103 ¶ 5.  The Court is hard-pressed to find that such advice—advice Petitioner does not dispute receiving but simply disagrees with—illustrates that counsel's performance was so deficient as to fall below an objective standard of reasonableness.  To the contrary, the Court deems counsel's representations to Petitioner entirely reasonable and legally sound.  See generally Burrage v. United States, 571 U.S. 204 (2014) (discussing the requirements of the "death results" enhancement of 18 U.S.C.

---

[4] In her reply, Petitioner quotes at length from counsel's affidavit.  ECF No. 115, at 7–8.  Critically, although she disputes the correctness of what counsel told her concerning the law and his view of the evidence, Petitioner does not dispute the content of such statements—that is, Petitioner does not contest that what counsel claims in his affidavit to have told Petitioner is what he in fact told her.

§ 841(b)(1)(A)-(C)).  Petitioner's second ineffective assistance claim, therefore, fails the first prong of the Strickland test and is alternatively **DENIED** on that basis.

### B. Ground Three: Prosecutorial Misconduct

Petitioner next seeks habeas relief on the ground of prosecutorial misconduct in three respects: (1) coercing Petitioner to plead guilty; (2) selectively prosecuting Petitioner with respect to Count Two; and (3) threatening to refrain from filing a Rule 35 motion for a sentence reduction if Petitioner did not withdraw her § 2255 motion.[5]

### 1. Coercion

First, Petitioner argues that she was coerced into pleading guilty.  Specifically, she claims that the Assistant United States Attorney John Butler "indicated that Mrs. Best was obligated to sign the Plea Agreement and Statement of [F]acts or her oldest daughter would be charged with a superseding indictment."  ECF No. 94, at 7.  Consequently, Petitioner "forfeit[ed] her innocence in exchange for no third party charges against her child"—a choice that she "was given only 27 days to make."  Id.  In her reply,

---

[5] The Court notes that Petitioner failed to raise the first two of these claims on direct appeal, which would appear to render them procedurally defaulted as she has not established cause and prejudice or actual innocence. See United States v. Harris, 183 F.3d 313, 317 (4th Cir. 1999); see also Frady, 456 U.S. at 166-67.  However, because the Government does not raise such procedural defense, and because the claims otherwise lack merit, the Court addresses such claims on the merits.  See United States v. Caro, 102 F. Supp. 3d 813, 829 (W.D. Va. 2015) (noting district courts' discretion regarding whether to raise the issue of procedural default sua sponte).

Petitioner further points to her statement to the probation officer, as reflected in the PSR, that "although she was guilty, she felt 'coerced' to sign the Statement of Facts and Plea Agreement in this case. She indicated that the Government 'threatened' to charge her oldest daughter if she did not plea[d] guilty, even though her daughter was never involved." ECF No. 81, at 11. The PSR continues,

> The information the defendant relayed at the end of the interview was provided to the Court, Mr. Woodward and Assistant United States Attorney (AUSA) John F. Butler. Both Mr. Woodward and AUSA Butler confirmed defendant was told her daughter was a target of the offense and in exchange for the defendant's guilty plea, the Government agreed it would not prosecute any other member of the defendant's immediate family.
>
> On January 16, 2019, Mr. Woodward advised he met with the defendant to discuss the matter. Mr. Woodward indicated the defendant maintains she is guilty in this matter and continues to take full responsibility for her actions. According to Mr. Woodward, the defendant's comments at the end of the presentence interview were not meant to minimize her guilt. Instead, they reflect her opinion and frustration of the process, because she did feel pressure to plead guilty, or risk her daughter being prosecuted.

Id. According to Petitioner, as reflected above, her attorney "acknowledged Best felt pressured, which would make a plea involuntary." ECF No. 115, at 15. Moreover, she claims that "Mr. Woodward did in fact repeatedly tell Best she had to agree to all questions at the plea hearing and [everything in the] statement of facts," or "the plea would not be accepted and her daughter would be prosecuted." Id. at 16. Such circumstances, Petitioner argues,

19

"ma[k]e it abundantly plain that [her] acknowledgement of guilt and signing of [the] plea [agreement] was involuntary" and "exacted as a consequence of undue psychological coercion and calculated pressure brought to bear through clever manipulation." Id.

As Petitioner correctly points out in her reply, "a plea bargain which involves leniency for a third person 'might pose a greater danger of including a false guilty plea by skewing the assessment of the risks a defendant must consider.'" United States v. Morrow, 914 F.2d 608, 613 (4th Cir. 1990) (quoting Bordenkircher v. Hayes, 434 U.S. 357, 365 n.8 (1978)). Consequently, "[s]pecial care must be taken to determine the voluntariness of the plea in such circumstances." Id. Despite Petitioner's claims, such care was exercised in this case as the Court was made fully aware of the terms of the Plea Agreement and thoroughly questioned Petitioner, under oath, regarding the voluntariness of her plea.

At the guilty plea hearing, Magistrate Judge Leonard inquired of the Government whether any other plea offers had been extended. ECF No. 98, at 10:10-13. The Government responded that there had been one prior offer—that Petitioner plead guilty to Counts One and Two as well as Count Twelve – Possession of Firearms During and in Relation to a Drug Trafficking Crime, id. at 10:21-24, the latter of which would have carried a mandatory minimum five-year sentence to be served consecutively to whatever sentence Petitioner would have received for the other counts, see 18 U.S.C.

§ 924(c)(1)(A)(i). But the Government withdrew that offer in favor of the one that Petitioner ultimately accepted, which, as defense counsel made explicit to the Court, included a promise by the Government not to prosecute Petitioner's family, ECF No. 98, at 14:21-15:21, and which the Government, defense counsel, the Court, and Petitioner agreed was far more favorable to Petitioner than the initial offer, id. at 10:14-15, 11:6-19, 15:11-16:5.

With knowledge of the immunity provision in the Plea Agreement, Judge Leonard asked Petitioner whether "anyone threatened [her] in any way or used force against [her] in order to make [her] plead guilty," to which Petitioner responded, "No, sir." Id. at 16:13-15. Judge Leonard also inquired as to whether anyone, including her attorney and the United States Attorney, had made any promise of leniency or promise of any kind, other than what was contained in the Plea Agreement, in return for her guilty plea. Id. at 16:6-11. Petitioner answered in the negative. Id. at 16:12. Moreover, as previously stated, Petitioner affirmed under oath that she was pleading guilty because she was in fact guilty of the charged offenses, and that she was entering her plea knowingly, freely, and voluntarily. Id. at 23:1-6. "While not, in an appropriate case, an insurmountable barrier to a defendant who claims that h[er] plea was coerced, such declarations made in open court carry a strong presumption of veracity." Morrow, 914 F.2d at 613-14.

Furthermore, at sentencing, the Court asked Petitioner whether there was any reason why it should not accept the Plea Agreement and make a finding of guilt. ECF No. 99, at 5:17-25, 6:4. Petitioner answered, "No, sir." Id. at 6:5. As a result, the Court accepted the Plea Agreement and made the finding of guilt as to Counts One and Two. Id. at 6:6-7. Later, the Court asked Petitioner whether there were any objections or errors in the PSR (other than those already raised by her attorney) that she needed to bring to the Court's attention, and whether there was anything else she wanted to tell or ask the Court about. Id. at 38:7-14. Petitioner never raised the issue of coercion. Such was the case even after the Court later discussed the PSR in great detail, including those portions cited above relating to Petitioner's statement to the probation officer that she felt coerced to sign the Plea Agreement. ECF No. 99, at 71:3-20.

In light of the above, the Court finds that Petitioner has failed to demonstrate "extraordinary circumstances" to overcome the "formidable barrier" of her sworn testimony before this Court, which wholly refutes her claim of coercion.[6] Lemaster, 403 F.3d at 221. Accordingly, the Court rejects such claim.

---

[6] Moreover, Petitioner has provided no evidence to support her bald assertion that the Government otherwise lacked probable cause to charge Petitioner's daughter.

## 2. Selective Prosecution

Second, Petitioner argues that the Government engaged in selective prosecution given that only she, and not co-defendants Milligan and Bardall, was charged in Count Two – Distribution of Fentanyl Resulting in Serious Bodily Injury.[7]  ECF No. 94, at 7, 15; ECF No. 115, at 11-14.  Such claim lacks merit.  Selective prosecution in violation of the Fifth Amendment's Due Process Clause occurs where a prosecutorial decision is based on "an unjustifiable standard such as race, religion, or other arbitrary classification."  United States v. Armstrong, 517 U.S. 456, 464 (1996).  To succeed on such a claim, Petitioner must present "clear evidence" that the prosecutor's decision "had a discriminatory effect and that it was motivated by a discriminatory purpose," id. at 464-65, a standard the Fourth Circuit has described as "particularly demanding," United States v. Passaro, 577 F.3d 207, 219 (4th Cir. 2009).  Here, Petitioner has presented no evidence that the prosecutor's decision had either a discriminatory effect or was motivated by a discriminatory purpose.  To the contrary, as indicated by Petitioner, such decision was apparently made due to her "being last to cooperate and her criminal history in Virginia Beach."  ECF No. 115, at 13.  Such decision, if true, is far from

---

[7] In her reply, Petitioner appears to characterize this particular claim as an ineffective assistance claim, arguing that counsel should have asserted selective prosecution, ECF No. 115, at 11, 13, though it is not so framed in her original § 2255 motion.  Regardless of the proper characterization of this ground, the result is the same, as discussed herein.

constituting an "arbitrary classification[]" in violation of the Fifth Amendment.   Accordingly, Petitioner's claim of selective prosecution fails.[8]

### 3. Rule 35 Motion

Finally, Petitioner argues that Assistant United States Attorney Butler engaged in misconduct by, in response to Petitioner's post-conviction filings, sending an email to Mr. Woodward "indicating if Mrs. Best moves forward with a [§] 2255 [motion] he will not be able to maximize her credit for substantial assistance with a Rule 35 motion." ECF No. 94, at 15.   Petitioner has attached a copy of such email to her § 2255 motion, the authenticity of which the Government does not dispute.   ECF No. 95-4.   Put briefly, Mr. Butler's email advises Mr. Woodward that Mr. Butler "intend[s] to make a request to the EDVA Substantial Assistance Committee to file a Rule 35 Motion" to reduce Petitioner's sentence, but it also cautions that "if [Petitioner] files frivolous pleadings, it may impact [Mr. Butler's] ability to maximize her credit with the committee."   Id.   Mr. Butler then asks whether Mr. Woodward would "consider writing [Petitioner] a letter" on such issue.   Id.

---

[8] Consequently, to the extent this claim is properly analyzed as an ineffective assistance claim, such claim fails as "there can be no claim of ineffective assistance where, as here, counsel is alleged to have failed to raise a meritless argument." Moore v. United States, 934 F. Supp. 724, 731 (1996); accord United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim.").

Mr. Woodward apparently agreed to do so as Petitioner also attached to her motion a letter from Mr. Woodward, which reads,

> Please see attached an email that I received from the United States Attorney.  I wanted you to have this information before you take any actions that may impact your sentence reduction.  It is completely up to you how you proceed and I cannot give you advice on a § 2255 motion, but I do think you should carefully consider all your options before you decide how to proceed.

ECF No. 94-6.

For the reasons highlighted by the Government in its response, the Court rejects this claim of prosecutorial misconduct.  First, the Government's communication did not constitute an improper threat.  Indeed, on its face, the email merely cautions that "frivolous pleadings . . . may impact [Mr. Butler's] ability to maximize [Petitioner's] credit with the [Substantial Assistance Committee]," ECF No. 94-5 (emphasis added), which the Government represents takes into account any "untrue statements made by defendant in post-conviction proceedings . . . when deciding whether a Rule 35 motion is warranted," ECF No. 107, at 20.  Second, Petitioner has cited no legal authority holding that such a preemptive warning amounts to prosecutorial misconduct cognizable in a § 2255 motion.  Cf. United States v. Dais, 308 F. App'x 677, 677-78 (4th Cir. 2009) (unpublished per curiam) (stating that "whether to file a Rule 35(b) motion is a matter left to the government's discretion" unless "the government has obligated itself in a plea agreement to move for a reduction" or "the

government's refusal to move for a reduction was based on an unconstitutional motive").

For the foregoing reasons, the Court finds that each of Petitioner's claims of prosecutorial misconduct is without merit. The Court, therefore, **DENIES** her § 2255 motion in that regard.

### C. Ground Four: Failure to Hold a Hearing Regarding Petitioner's Claim of Coercion

The fourth ground identified in Petitioner's § 2255 motion seeks relief on the basis that the Court failed to hold a hearing on Petitioner's claim that she felt coerced into signing the Plea Agreement. ECF No. 94, at 8. The Court has already discussed in detail its interactions with Petitioner at both the guilty plea hearing and the sentencing hearing with respect to the voluntariness of her plea. Notwithstanding Petitioner's post-conviction claims to the contrary, she was given every opportunity to raise the issue of coercion before the Court, yet did not do so. Nor, the Court reiterates, has she demonstrated extraordinary circumstances otherwise entitling her to relief. For these reasons, the Court **DENIES** Petitioner's § 2255 motion as to this ground.

### D. Ground Five: Inaccurate Information in the PSR

Finally, Petitioner's § 2255 motion claims that the PSR contained inaccurate information.[9]   Specifically, Petitioner contends that the PSR included: (1) an incorrect date (taken from the Statement of Facts) regarding the commencement of the drug conspiracy; (2) conflicting drug weights; and (3) an inaccurate statement involving Petitioner's husband. Id. at 15-16.  Putting aside the fact that, at sentencing, Petitioner never raised the first two purported errors and the Court addressed the third,[10] none of them entitles Petitioner to § 2255 relief.

As to the supposed incorrect date, the PSR recites the Statement of Facts, which states in the first numbered paragraph, "From in or about July 2016 to in or about March 2018, the defendant, MICHELLE RENEE BEST, served as a source of supply for various quantities of narcotics which were found to contain fentanyl, heroin, heroin laced with fentanyl, and cocaine to numerous individuals including . . . co-conspirators." ECF No. 81, at 5 (emphasis added); see also id. at 11 (stating date of earliest relevant conduct as July 2016).  According to Petitioner,

---

[9] Similar to the selective prosecution claim above, contrary to her original § 2255 motion, Petitioner characterizes this ground in her reply as an ineffective assistance claim—failure to object to the inaccuracies in the PSR.  Again, regardless of the proper characterization, the result is the same.

[10] The Court further notes that Petitioner did not raise any of these claims on direct appeal.

the correct date is "July 2017," ECF No. 94, at 15 (emphasis added), which, the Court notes, is consistent with the date alleged in the indictment, ECF No. 1, at 1.   The Government, however, points out that "July 2016" is the date reflected in the Statement of Facts, which Petitioner signed and affirmed under oath at her guilty plea hearing was correct.   ECF No. 107, at 22-23.

Such dispute, however, is immaterial because even assuming Petitioner is correct, such error had no substantive effect on Petitioner's conviction or sentence.   Indeed, whether the drug conspiracy began in 2016 or 2017 does not impact Petitioner's conviction for engaging in such conspiracy because none of the essential elements of that charge requires the conspiracy to occur over any specified time period, see United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (en banc) (listing essential elements of drug conspiracy), and because the Statement of Facts otherwise contained a sufficient basis for the conviction and adequately apprised Petitioner of the charge and the conduct forming the basis of such charge, see United States v. Patterson, 713 F.3d 1237, 1249-50 (10th Cir. 2013) (holding that a superseding indictment that failed to list the start date of a drug conspiracy was not defective where the indictment "sufficiently notifie[d] [the defendant] of the charges against which he had to defend" by stating "the members and goals of the drug conspiracies, the conspiracies' geographic scopes, the drugs distributed in the

conspiracies, and the conspiracies' termination dates"). Similarly, the start date of the drug conspiracy had no effect on Petitioner's statutory sentencing range or her Guideline range, which were respectively derived from the quantity of drugs involved in the conspiracy, see 21 U.S.C. § 841(b)(1)(B), as well as the fact that Petitioner's distribution of fentanyl resulted in the death of another (Count Two), see U.S.S.G. § 2D1.1(a)(2). And it is this latter factor that was the driving force of the sentence ultimately imposed, with the length of the conspiracy being of minimal importance. Therefore, the purported error regarding the start date of the drug conspiracy does not give rise to a cognizable claim to relief under § 2255. See 28 U.S.C. § 2255(a).

The same holds true as to the other claimed inaccuracies. As to the alleged conflicting drug weights, such discrepancies[11] did not affect the Guidelines calculation. As just discussed, the Base Offense Level of 38 was driven by the fact that Petitioner's drug activity resulted in the death of another—not the total drug weight attributed to Petitioner. ECF No. 81, at 11–12; see also U.S.S.G. § 2D1.1(a)(2) (providing a Base Offense Level of 38 where "the defendant is convicted under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C) . . . and the offense of conviction establishes that death or serious bodily injury resulted from the

---

[11] The Government's response attempts to explain such discrepancies. See ECF No. 107, at 23.

use of the substance"). Even Petitioner concedes this point in her reply. ECF No. 115, at 19. Accordingly, any discrepancy with respect to the attributed drug weights in the PSR is immaterial for purposes of the instant motion and does not entitle Petitioner to relief.

As to the alleged inaccurate statement in the PSR regarding Petitioner's long-missing husband, which Petitioner claims was used "to make a mockery out of [her] character," ECF No. 94, at 16, the Court does not go into great detail regarding such claim other than to note that defense counsel identified the disputed statement at sentencing, the Court made a hand-written amendment to the PSR to address Petitioner's concerns, and nothing about such statement or interaction affected Petitioner's conviction or sentence. See ECF No. 99, at 6:12-10:3. As such, this claim, like the other two, forms no basis for § 2255 relief.[12] For these reasons, Petitioner's motion as to this ground is **DENIED**.[13]

### IV. CONCLUSION

For the reasons stated above, Petitioner's § 2255 motion is **DENIED**. ECF No. 94. Petitioner's motion to proceed in forma

---

[12] To the extent this ground is appropriately viewed as an ineffective assistance claim, it is **DENIED**. As previously stated, the alleged errors had no effect on Petitioner's conviction or sentence, and Petitioner is therefore unable to satisfy the prejudice prong of Strickland.

[13] In her reply, Petitioner also briefly asserts that counsel provided ineffective assistance by "fail[ing] to consult with [her] about an appeal." ECF No. 115, at 19. Petitioner did not raise this claim in her original § 2255 motion, and the Court **DISMISSES** it as time barred.

*pauperis*, ECF No. 96, and motion for an extension of time to file a reply, ECF No. 116, are **DENIED AS MOOT**.

Finding that the basis for the denial of Petitioner's § 2255 motion is not debatable, a certificate of appealability is **DENIED**. 28 U.S.C. § 2253(c); see Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537 U.S. 322, 335-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-85 (2000). Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, she may seek a certificate from the United States Court of Appeals for the Fourth Circuit. Fed. R. App. P. 22(b); Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Fourth Circuit, she must do so **within sixty (60) days** from the date of this Opinion and Order. Petitioner may seek such a certificate by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner and to counsel for the Government.

**IT IS SO ORDERED.**

_____
                                                /s/
                                        Mark S. Davis
                            Chief United States District Judge

Norfolk, Virginia
April __29__, 2021